## SCOTT *v.* BEDELL.

1. An attorney at law for a party in whose favor a verdict is rendered on the trial of an appeal in a justice's court can enter in behalf of his client a judgment on such verdict any time within four days after the adjournment of the court; and if such judgment conforms to the verdict, the justice has no alternative but to transcribe the same upon his docket.
2. Issuing an execution being a mere ministerial act, a justice of the peace may be compelled by mandamus to perform this duty.

Submitted May 18, — Decided July 21, 1899.

Mandamus.    Before  Judge  Bennet.    Camden  county. January 21, 1899.

*A. E. Eve* and *Ira E. Smith*, for plaintiff in error.
*E. J. Stafford* and *Alex. A. Lawrence*, contra.

COBB, J.   J. K. Bedell brought a petition for mandamus against F. E. Scott, notary public and ex officio justice of the peace.   The case made by the petition is substantially as follows:   Bedell brought suit in the court over which Scott presided, against Walter Wyatt, claiming a balance on an account with interest; and judgment was rendered by the justice in favor of Bedell.   Wyatt appealed to a jury, by giving bond with Swift as security.   When the case came on for trial before the jury, the plaintiff offered evidence to establish his claim, and Wyatt admitted the claim to be correct; whereupon the jury returned a verdict in favor of Bedell for the full amount sued for.   Bedell's attorney then prepared a judgment on the original papers for the amount recovered, together with interest and costs, against Wyatt as principal and Swift as security. This judgment was presented to the justice before the adjournment of his court, for his official signature, and he refused to sign the same unless the name of Swift as security should be stricken therefrom.   This not being done, the justice signed up judgment on his docket against Wyatt alone.   Two days later Bedell's attorney signed up judgment on the original papers for the amount recovered against Wyatt as principal and Swift as security.   An execution based on this last-mentioned judgment was then presented to the justice for his signature, and he refused to sign the same because the name of Swift as se-

curity. was embraced therein. The prayer of the petition was that the justice be required to sign the execution. On this petition the judge granted a rule nisi, calling upon Scott to show cause why a mandamus absolute should not be granted against him, requiring him to sign the execution. Scott appeared and demurred to the petition, on the ground that mandamus would not lie in such a case, certiorari being the remedy; and on the further ground that the petition showed that the justice had already rendered a judgment in the case against Wyatt and refused to render judgment against the security on the appeal bond, and if so doing was error, certiorari was the remedy to correct it. The judge overruled the demurrer. Scott then filed an answer to the petition, in which he set up that the judgment signed by Bedell's attorney was null and void, because it was not signed by the justice who tried the case, and because the justice had previously entered upon his docket a judgment in the case. After considering the petition and the answer, the judge granted a mandamus absolute, requiring Scott to sign the execution, and he excepted.

1. The first question presented for determination in this case is, whether the attorney at law for the plaintiff in a suit in a justice's court, in which the plaintiff obtained a verdict on the trial of an appeal in that court, can in behalf of his client enter a judgment on such verdict after the adjournment of the term of the court at which the verdict was rendered. In 1797 an act was passed by the General Assembly, which was entitled an act to revise and amend the judiciary system of this State. In the act justices' courts were recognized as a part of the judiciary system of the State, and it was therein provided that any party dissatisfied with the judgment of the justice should be allowed to enter an appeal on payment of costs and giving security within three days after the judgment; such appeals to be tried before a jury in that court consisting of five jurors. Marbury & Crawford's Dig. pp. 271, 287. In 1799 an act was passed amendatory of the act above referred to, and it was therein provided, "That in all cases where a verdict shall be rendered, the party in whose favor it may be shall be allowed to enter and sign judgment thereon at any time within four

days after the adjournment of the court, at the clerk's office, for the amount of such verdict and all legal costs are recoverable thereon, and no execution shall issue on any verdict until such judgment shall be entered, signed by the party or his attorney." Mar. & Craw. Dig. 291, 299. In 1809 an act was passed which provided that "it shall be the duty of each justice of the peace in this State, to keep a fair and legible book of entry of all civil proceedings had before him, for the recovery of debts, &c." Cobb's Dig. 638. In 1826 an act was passed providing that, "In all cases of appeal where security hath been given, and hereafter given, and hereafter to be. tried, it shall and may be lawful for the plaintiff or his attorney to enter up judgment against the principal and the security, jointly or severally, and execution shall issue accordingly and proceed against either or both, at the option of the plaintiff until he is satisfied." Hotchkiss's Stat. Law of Georgia, 602, Price's Dig. 461. That part of the act of 1797 which provided for appeals from the judgment of a justice of the peace to a jury in his court is embodied in the Code of 1863, §§4069, 4070, in substantially the same language as appears in the original act. That provision of the act of 1799 in reference to entering up judgments on verdicts is found in the Code of 1863, §3487, in the following language: ".In all cases when a verdict shall be rendered, the party in whose favor it may be, or his attorney, shall be allowed to enter and sign up judgment thereon at any time within four days after the adjournment of the court at which such verdict was rendered, for the amount thereof and all costs recoverable thereon, and no execution shall issue on any verdict until such judgment shall be entered up and signed by the party or his attorney." That code also contains a provision which requires justices of the peace "to keep a docket of all causes brought before them, in which must be entered the names of the parties, the returns of the officer, and the entry of the judgment, specifying its amount, and the day of its rendition." §429 (6). The section just quoted contains, in effect, the provisions of the act of 1809, though in a little more definite terms. That part of the act of 1826 referred to above is contained in section 3490 of the Code of 1863, in the exact language of the act.

The provisions contained in the Code of 1863 in reference to appeals to a jury in the justice's court are found in section 4098 et seq. of the Code of 1868. Such appeals having been thereafter abolished and not re-established until after the adoption of the constitution of 1877, of course no provisions in relation to such appeals appear in the Code of 1873, and the provisions of the present code on this subject are substantially the same as those contained in the Code of 1882. Civil Code, §4140 et seq. Sections 3487 and 3490 of the Code of 1863, and that part of section 429 quoted above, have made their appearance in all of the codes and are in the present code exactly in the language in which they appeared in the former codes. Civil Code, §§ 5339, 5342, 4082. Prior to the act of 1826 there was no authority for the plaintiff to enter judgment against the security on the appeal at the same time that he entered judgment against the principal. The remedy in such case was by writ of scire facias, or action of debt on the appeal bond, as at common law. *Bank* v. *Moore,* 6 *Ga.* 416.

The act of 1799 expressly declared that the plaintiff might enter up judgment against the defendant *in all cases* where a verdict had been rendered in his favor, and impliedly recognized the right of the attorney for the plaintiff to enter such judgment. The act of 1826 expressly declared that the attorney might enter judgment against the principal and security on the appeal *in all cases of appeal.* The codifiers of the Code of 1863 changed the act of 1799 so as to expressly provide that the attorney of the successful party might enter judgment *in all cases* when a verdict had been rendered in his favor. At no time have the provisions of the law in reference to entering judgments on verdicts, and entering judgments against the securities on the appeal bonds ever been limited to any particular court; the expression *"in all cases"* being used each time that the subject was referred to, indicating that the law was intended to be exhaustive of the subject and was to apply to any case in any court where there might be a verdict rendered, or where there might be occasion to enter a judgment against the security on the appeal. There is nothing in the language of the section of the present code nor in the history of the law which would

require, or even authorize, us to hold that these provisions were not intended to apply to cases of the character therein referred to, when such cases were in the justice's court. It is said, however, that these provisions can not apply to a justice's court, because the law declares that the justice shall enter judgments in his court upon his docket. The entries upon the docket of the justice of the peace are in the nature of minutes of a court, and every fact transpiring in connection with cases tried in his court, essential to the validity or regularity of the judgment rendered, should be entered upon the docket. *Gray* v. *Mc-Neal*, 12 *Ga.* 424; *Benson* v. *Dyer*, 69 *Ga.* 190; *Ramsey* v. *Cole*, 84 *Ga.* 147; *Lee* v. *Arnsdorff*, 86 *Ga.* 264; *Telford* v. *Coggins*, 76 *Ga.* 863. When a justice renders a judgment in a case tried by him without a jury, the judgment should be entered on the docket. It is true that he need not sign it: *Gunn* v. *Tackett*, 67 *Ga.* 725; and it is also true that when he has "rendered" the judgment, the mere ministerial act of transcribing it upon his docket may be done after the court has adjourned and at a place different from that at which the judgment was rendered: *Ryals* v. *McArthur*, 92 *Ga.* 378. When a verdict is rendered on the trial of an appeal in his court, he should enter the verdict on his docket. In doing all acts of this kind the justice acts in a mere clerical capacity; and when a judicial act is performed by him, as determining what is to be the result in a case, at the time and place required by law, the mere clerical work of entering this result upon the record provided by law may be done at any time. When a verdict has been rendered in a justice's court the plaintiff is entitled to a judgment against the principal and security on the appeal. There does not seem to be any reason why this judgment should not be entered by the justice. See in this connection *Stewart* v. *Hall*, 106 *Ga.* 172. But that the · justice may enter this judgment, which he does simply as a ministerial and not as a judicial officer, as is the case when a judgment is rendered by him without the verdict of a jury, is no reason why an attorney, who is also an officer of the court, may not be allowed to enter upon the papers in the case, as is the practice in the superior court, a judgment upon such verdict and file the same with the justice,

who shall enter it upon his docket; and especially would this be true in a case where the justice does not enter the proper judgment in the case.   The law expressly declares that attorneys may enter and sign up judgments at any time within four days after the adjournment of the court at which the verdict is rendered, and when this is done and the judgment so signed and entered is filed with the justice of the peace, if such judgment is one authorized by the verdict, the justice has no alternative except to issue an execution thereon.   The mere failure to enter the judgment upon the docket will not vitiate it nor prevent the issuance of the execution upon it.   *Dodd* v. *Glover*, 102 *Ga.* 82. The plaintiff was entitled to a judgment against the principal and security on the appeal bond.   His attorney had a right to sign and enter such judgment, and, this having been done, the justice should have issued an execution in conformity to such judgment.   It is true that in the case of *Greene* v. *Oliphant*, 64 *Ga.* 465, it was held that where a judgment had been regularly entered upon the docket of the justice of the peace, subsequently entering what purported to be a second judgment on the "papers" in the case was a nullity.   That was not a case where there had been an appeal entered and a verdict rendered thereon, but was simply a case where the justice had reached the case in its order, heard and determined it, entered his conclusion upon the docket, and afterwards, becoming satisfied that the judgment so rendered was upon insufficient evidence, reopened his court and entered another judgment upon the papers.   That such a proceeding as this was unauthorized by law there can be no doubt.

2. It is contended that even if the justice should have issued the execution, the remedy to compel him to do so was not by mandamus, as the plaintiff could have sued out a writ of certiorari from the refusal of the justice to issue the execution, or, waiting until the next term, could have made a motion to amend the judgment which had been entered by the justice, so as to make it conform to the law ; and had such motion not been granted, certiorari would have been available to correct the error thus committed.   It seems to us that the plaintiff had a clear legal right to have this execution issued on the judgment ·

signed up by his attorney; and it being a mere ministerial act involving no judicial function, but a matter about which the justice had no discretion, mandamus was the appropriate remedy. Whenever the law imposes "upon a judicial officer the duty of performing certain acts of a ministerial nature which do not depend upon his judgment or discretion but are absolutely imposed by positive enactments, the performance of such a specific duty may be compelled" by mandamus. Mechem, Pub. Off. § 976; Wood, Mand. p. 3 et seq.; Merrill, Mand. § 30 et seq.; State *v.* Streng, 49 N. J. L. 537. In the case of *Starnes* v. *Tanner*, 73 *Ga.* 144, it was held that a justice of the peace would not be compelled by mandamus to enter a judgment against a garnishee who was in default. The mere statement of the question involved in that case is sufficient to show the correctness of the decision. The justice had decided judicially that the judgment should not be entered, and in such a case the remedy is of course by certiorari.

*Judgment affirmed. All the Justices concurring.*