## 819. NASHVILLE, CHATTANOOGA AND SAINT LOUIS RAILWAY *v.* BROWN.

1. When an attachment is levied by serving summons of garnishment, two distinct cases arise, the one between the plaintiff and the. defendant, the other between the plaintiff and the garnishee; though the latter is subsidiary to the former. The case against the garnishee is not ripe for final trial and judgment until the plaintiff has obtained and produces a valid enforceable judgment against the defendant or the fund impounded.

2. The judgment contemplated as the indispensable prerequisite to a final judgment against the garnishee is a formal, duly entered judgment,— one capable of present enforcement.

(a) In justices' courts "resort must be had to the docket entry, and to it alone, in order to determine in a given case whether or not there was a valid and lawful judgment."

(b) "A mere verbal announcement by a justice of the peace after the trial of a cause, as to what conclusion he has reached, does not in law constitute a judgment." A judgment of a justice of the peace can not be enforced by execution or "in any other way known to the law," until it has been entered on the docket.

(c) To allow a judgment to subject money in a garnishment case is to enforce it.

3. A justice of the peace has the power to amend a judgment rendered by himself in mere matters of form, or otherwise, not affecting its legal tenor or effect; but he has no power, by amendment or otherwise, to enlarge or diminish its original scope or to change it in any matter of substance.

4. In an attachment case, where summons of garnishment has issued, it is grossly irregular to render a single judgment against the defendant and the garnishee jointly. As against the garnishee, at least, such a judgment is absolutely void. It can not by amendment be converted into separate judgments, the one against the defendant, the other against the garnishee.

5. Where, in an attachment case, summons of garnishment has issued and a joint judgment is entered against the defendant and the garnishee, and execution issues thereon and is levied on the property of the garnishee, and the garnishee files illegality on the ground that no valid

36

judgment has been rendered against him, it is error, on the hearing of the illegality, for the magistrate to allow the judgment as entered to be so amended as to convert it into separate judgments, one against the defendant, the other against the garnishee, notwithstanding that at the time judgment was entered both cases were in default for lack of answer, and the justice announced judgments against the defendant and the garnishee separately.

(*a*) A default may be adjudged against the garnishee prior to the rendition or entry of judgment against the defendant in the main case; but such adjudication merely concludes the question that the garnishee is in possession of the funds or property sought to be impounded, and is not a final judgment.

(*b*) No final judgment capable of enforcement by execution can be rendered against the garnishee in the subsidiary action, until after there has been a sufficient proper judgment rendered and entered against the defendant in the main action.

(*c*) A refusal to sustain the illegality filed by the garnishee was therefore erroneous, and the certiorari brought to correct this ruling should not have been overruled.

Certiorari, from Fulton superior court—Judge Ellis. October 11, 1907.

Argued January 20,—Decided February 11, 1908.

*Tye, Peeples, Bryan & Jordan, Charles A. Read,* for plaintiff in error. *Maddox & Sims,* contra.

PowELL, J. Brown sued out, in a justice's court, an attachment, and caused summons of garnishment to issue to the Nashville, Chattanooga & St. Louis Railway. At the first term there was no appearance by either the defendant or the garnishee. The magistrate entered on his docket a judgment in favor of the plaintiff against the defendant and the garnishee jointly. Upon this judgment an execution was issued, which was levied on property of the garnishee, and the garnishee filed an affidavit of illegality. At the hearing of the illegality, the justice of the peace, on motion of the plaintiff, allowed the judgment to be amended by converting it into separate judgments against the defendant and the garnishee, and thereupon overruled the illegality. The railway company took certiorari to the superior court, and upon the hearing there the action of the magistrate was sustained and a new trial refused. To this judgment the railway company excepts. In his answer to the certiorari the magistrate explains that when it appeared that neither the defendant nor the garnishee had made any appearance at the first term of the court, he announced judgment against the defend-

ant and the garnishee separately, but, by inadvertence of a clerical assistant, the joint judgment was written up and entered on the docket. He further explains that he knows of no law "requiring separate cases made or entered on the docket as against defendant and garnishee."

1. When an attachment is levied by service of summons of garnishment, two distinct cases arise,—one between the plaintiff and the defendant, the other between the plaintiff and the garnishee. The defendant may, by executing a dissolving bond, make himself a party to the second or subsidiary suit, but, in the absence of this action on his part, is not so. The garnishee is not a party to the attachment case, and has no interest in it, until the judgment which may be obtained thereon is offered in evidence in the second suit as the basis for the judgment then sought against him; and then he may assail the judgment in the first suit, on any ground which would render it void against the defendant or ineffectual to reach the fund in controversy. The garnishee has a right to demand, as a condition precedent to a final judgment against him, the exhibition of a judgment against the defendant, of such force, validity, and efficacy that, were the defendant to sue the garnishee upon the debt sought to be impounded by the garnishment, the production of the judgment against the defendant would be a complete defense. The fact that the garnishee is in default for lack of answer in no wise diminishes this right. *Ingram* v. *Jackson Merc. Co., 2 Ga. App.* 218 (58 S. E. 372); *Fagan* v. *Jackson, 1 Ga. App.* 24 (57 S. E. 1052). Until a valid judgment against the defendant has been obtained, the case against the garnishee is not ripe for final adjudication.

2. While, as held by the Supreme Court in *Morrison* v. *Hilburn, 126 Ga.* 114, "If the judgment against the defendant has been rendered in the court in which the garnishment is pending, the justice may look to such judgment to ascertain the amount of the judgment to be rendered against the garnishee, without such judgment being formally offered in evidence," still the judgment against the defendant must exist in such form that it can be "looked to," that is to say, must be subject to inspection, and must not rest solely in the mind of the justice nor in a mere oral announcement; it must be in such shape that the garnishee can see and know that he will be protected by it; in such shape that he

can plead it in bar against the defendant, if the defendant should thereafter seek to hold him liable on the debt seized by the garnishment.

It is the duty of justices of the peace, "to keep a docket of all causes brought before them, in which must be entered the names of the parties, the returns of the officer, and the entry of the judgment, specifying its amount and the day of its rendition." Civil Code, §4082 (6). "It can not then be doubted that resort must be had to the docket entry, and to it alone, in order to determine in a given case whether or not there was a valid and lawful judgment." *McCandless* v. *Inland Acid Co.,* 112 *Ga.* 291, 298. "A mere verbal announcement by a justice of the peace after the trial of a cause, as to what conclusions he has reached, does not in law constitute a judgment. Such an announcement is certainly not a judgment upon which an execution can issue, *or which can be enforced in any way known to the law* [italics ours], save by its being properly reduced to writing, and signed by the magistrate." *Hargrove* v. *Turner,* 108 *Ga.* 580, 582. (The statement as to the necessity for signing is, however, dictum and in conflict with an unbroken line of decisions by the Supreme Court.) The entry of the judgment by the justice of the peace, when he renders the judgment, is a judicial act, differing in this respect from the ministerial function performed by him in entering judgment upon the verdict of the jury on appeal. *Scott* v. *Bedell,* 108 *Ga.* 205, 209. The case of *Ryals* v. *McArthur,* 92 *Ga.* 378, holding that a justice may lawfully enter upon his docket in vacation a judgment announced by him in term time, is not in harmony with the logic of the decisions, both prior and subsequent; though in most of the subsequent cases the Supreme Court has been able to distinguish it on its facts, without overruling it. Be this as it may, it is none the less true, upon the authority already given, that a judgment, though orally announced, is not in a position "to be enforced in any way known to the law," until it is reduced to writing and placed on the docket. To allow a judgment to subject money in a garnishment case is to enforce it. *Ingram* v. *Jackson Merc. Co.,* supra. From the decisions it may be deduced that, to be enforced as the judgment of the justice (not on appeal), there must be a written judgment actually entered on the docket during the term (whether consistent with his previous oral announcement or not) ; or, if no

judgment is entered on the docket during the term, a judgment announced in term and transcribed on the docket after adjournment. See *Park* v. *Callaway,* 128 *Ga.* 119; *Ramsey* v. *Cole,* 84 *Ga.* 147. To effectuate certainty, these decisions holding that the written entry on the docket is the highest evidence of the judgment will be followed, and the decision in the case of *Ryals* v. *McArthur* will not be extended beyond the particular facts. Of course no effect at all is to be given to a judgment entered on the docket in vacation when no such judgment was announced in term, or even when, if such a judgment has been announced in term, a contrary judgment has, during the same term, actually been written on the docket. If the justice announces one judgment, and by fraud, accident, or mistake enters another, equity has jurisdiction to set it aside.

3. Let us come then to the question of how far a justice may amend or modify a judgment formally entered by him. As a general rule, judgments, until the end of the term, are in the breast of the court, and may be amended, set aside, or changed, in form or in effect, at the will of the court; but this power does not exist in justices' courts. *O'Donovan* v. *Ocean Steamship Co.,* 1 *Ga. App.* 190, 191; *Field* v. *Peel,* 122 *Ga.* 503, 506, and cit.; *White* v. *Burnett,* 113 *Ga.* 151; *Field* v. *Jordan,* 124 *Ga.* 685, 687. The ministerial act of entering judgment on the verdict of the jury is governed by principles entirely different from those affecting the judgment rendered by the magistrate himself, and decisions as to the right of amending judgments of the former class are not here in point. But as to judgments rendered by the justice himself, while the power to set aside does not exist, yet there is some power of amendment. *Bell* v. *Bowdoin,* 109 *Ga.* 209. How far does it extend? The power to amend a judgment so that it should, in its substantial effect, be different from what it was originally is equivalent to the power to set aside one judgment and substitute another. The only logical result, therefore, is that the magistrate may amend his judgments only in matters of form. As in the case of *Bell* v. *Bowdoin,* supra, when the judgment expresses a finding against the defendant for the principal and interest sued for, an amendment of the pleadings, setting out definitely the amounts, does not vary the legal tenor and effect of the judgment, and is therefore permissible. An amendment which will give the judg-

ment a legal effect different from that originally stated, or which will extend or limit its scope, is not allowable.

4. As we have said above, where an attachment has been levied by service of process of garnishment, two separate cases arise, both in a sense distinct, though one subsidiary to the other. Therefore the rendition of a single judgment against both the defendant and the garnishee is a gross irregularity. *Fourth National Bank* v. *Mayer,* 89 *Ga.* 108; *Everett* v. *Westmoreland,* 92 *Ga.* 670. If not a nullity, the highest effect that can be given to such a judgment is to consider it as a judgment in the main action and binding only as to the defendant, the joining of the garnishee being regarded as surplusage. In this view, it would be permissible for the justice to amend by striking therefrom the name of the garnishee; for the only legal efficacy of the judgment is thus left preserved and unchanged; but he could not convert it into two judgments, one against the defendant and the other against the garnishee, thus giving it greater scope and efficacy than it formerly possessed.

5. Now to apply these principles to the case at bar: When the execution was issued against the garnishee, the only written judgment outstanding against him was the one in which he was included with the defendant, a judgment which, to give it any legal efficacy at all, we have construed as being rendered in the main case. Not being a party to the main case, he was not bound by this judgment, and illegality was a proper remedy. The execution was manifestly issued upon this judgment and not upon an announced, but not entered, separate judgment against the garnishee; for; as shown above, execution can only issue from a duly entered judgment. The judgment as actually entered spoke for itself, and neither parol testimony nor the recitals of fact which the magistrate sets up in his answer were competent to vary it by showing that it did not in fact speak the intention of the court. "No rule of law is better settled than the rule that the record of a court of competent jurisdiction imports absolute verity as to the proceedings which it sets forth as having taken place, and can not be contradicted by parol proof collaterally. The judgment entered by the court is conclusive evidence that such a judgment was actually rendered as therein stated." *Parsons* v. *State,* 97 *Ga.* 73, 75. The judgment as entered being capable of no higher legal effect than to bind the defendant only, the illegality could not be

avoided by amending the judgment so as to enlarge its legal effect and convert it into two judgments, one against the defendant and the other against the garnishee.

It is not contended that the separate written judgment against the garnishee was rendered otherwise than as an amendment to the judgment originally entered; but even if the subsequent entry of the separate judgment against the garnishee were sought to be upheld as the mere record of the judgment previously orally announced (placing the power so to enter it on the precedent of the case of *Ryals* v. *McArthur*, supra), this would have been ineffectual to uphold the fi. fa., for at least two good reasons: first, because under the case of *Hargrove* v. *Turner*, supra, there was no authority to issue fi. fa. until the judgment was entered as well as announced; also because the case against the garnishee, being subsidiary to the main case, was not ripe, either for the announcement or the entry of final judgment, until after there was a judgment entered (not merely orally announced) in the main case. It seems that even prior to the judgment in the main case a default of answer in the garnishment case may be ascertained and declared. Civil Code, §4153; *Jarrell* v. *Guann*, 105 *Ga.* 139, 142. This entry of default is not a final judgment, but a mere inchoation; for even after the default is adjudged (for this only adjudicates that the garnishee is in possession of sufficient funds to pay the plaintiff's claim), the production of a valid judgment against the defendant, capable of subjecting the fund, is essential to final judgment against the garnishee. With the existence or validity of the judgment against the defendant the garnishee has no concern, until the existence of funds in his hands is established, through a default, an admission, or the sustaining of a traverse. *Phillips* v. *Wait*, 105 *Ga.* 848; *Merchants Bank* v. *Haiman*, 80 *Ga.* 624; *Ingram* v. *Jackson Merc. Co.*, 2 *Ga. App.* 218 (2), 59 S. E. 372 (2).

We may say, in conclusion, that the lengthiness of this opinion has not been provoked by the amount involved in the controversy, but by the confusion and uncertainty that exists as to the practice on the questions involved. We see, by reference to the opinion given by the judge of the superior court, that he worried over the question for some time before reaching a conclusion. Very little that is said here conflicts with his views, but he thought that the judgment was amendable in substance; hence he reached a conclu-

sion contrary to ours. After this lengthy consideration of the question, we are of the opinion that his judgment should be

*Reversed.*